Scanned at CDCR and E-Mailed on 7/11/2022 by M-Patel
(date)   (initials)
Number of pages scanned: 25

Joseph Marsala    AF9575
Name and Prisoner/Booking Number

Sierra Conservation Center/ S.C.C.
Place of Confinement

5150 O'Byrnes Ferry Rd.
Mailing Address

Jamestown, Ca. 95327
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

**FILED**
Jul 11, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Joseph August Marsala
(Full Name of Plaintiff)      Plaintiff,

v.

(1) Ralph Diaz (Secretary of CDCR),
(Full Name of Defendant)

(2) Kathleen Allison (Director CDCR),

(3) Patrick Eaton (Warden @ S.C.C.),

(4) T. Allen (Chief Deputy Warden),
                  Defendant(s).

[X] Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 1:22-cv-00843-BAM (PC)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT BY A PRISONER**

Request Jury Trial

[X] Original Complaint
[ ] First Amended Complaint
[ ] Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   [X] 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   [ ] 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   [ ] Other: _____

2. Institution/city where violation occurred: Sierra Conservation Center/ Jamestown, Ca.

Revised 3/15/2016                 1

## DEFENDANTS (cont.)

T. Williams, (Appeals coordinator @ S.C.C.)

Keith Robinson, (Food Managers' overseer for CDCR)

H. Valencia, (Food Manager II for business division)

Luther, (culinary Cook's Supervisor)

Steve Smith, (M.D./ Chief Examiner Medical/CEM)

Dr. Sinclair, (Chief Medical Officer)

Mr. Martinez, (Corrections Officer Sargeant for Fac. B on 12-15-20)

Jane/john does (members of Covid-19 Movement Matrix, via Population Management Unit, in conjunction with Health Care Oversight Program, at Sierra Conservation Center)

J. Hernandez, (Correction Officer, stationed @ culinary on 6-27-22)

Mr. Griff , (Correction Sgt. author of retaliatory rule violation)

Joel Youngheim, Rabbi at Sierra Conservation Center

## B. DEFENDANTS

1. Name of first Defendant: <u>Ralph Diaz</u>. The first Defendant is employed as: <u>Secretary of CDCR until late 2020</u> at <u>                    </u>.
          (Position and Title)                       (Institution)

2. Name of second Defendant: <u>Kathleen Allison</u>. The second Defendant is employed as: <u>Director of CDCR till late 2020</u> at <u>                    </u>.
          (Position and Title)                       (Institution)

3. Name of third Defendant: <u>Patrick Eaton</u>. The third Defendant is employed as: <u>Warden</u> at <u>Sierra Conservation Center</u>.
          (Position and Title)                       (Institution)

4. Name of fourth Defendant: <u>T. Allen</u>. The fourth Defendant is employed as: <u>Chief Deputy Warden</u> at <u>Sierra Conservation Center</u>.
          (Position and Title)                       (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?  ☒ Yes   ☐ No

2. If yes, how many lawsuits have you filed? <u>2</u>. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: <u>Marsala</u> v. <u>Ralph Diaz, et. al.,</u>
      2. Court and case number: <u>2:19-cv-00513-KJM-CKD</u>
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) <u>U.S. Marshal ordered to serve defendant, still pending.</u>

   b. Second prior lawsuit:
      1. Parties: <u>Marsala</u> v. <u>Ra</u>
      2. Court and case number: <u>1:20-cv-01794-JLT (PC)</u>
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) <u>Retaliation Claim deemed stated, amended, still pending.</u>

   c. Third prior lawsuit:
      1. Parties: <u>N/A</u> v. <u>N/A</u>
      2. Court and case number: <u>N/A</u>
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) <u>N/A</u>

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

## B DEFENDANTS

Name of fifth defendant is T. Williams, Appeals Coordinator at S.C.C.

Name of sixth defendant is Keith Robinson, Overseer of CDCR Food Managers' statewide.

Name of seventh defendant is H. Valencia, Food Manager II for Business Division at S.C.C

Name of eighth defendant is, Mr. Luther, Culinary Cook Supervisor at S.C.C.

Name of ninth defendant is, Steve Smith, CEM, Chief Examiner Medical at, S.C.C.

Name of tenth defendant is, Dr. Sinclair, CMO, Chief Medical Officer at, S.C.C.

Name of eleventh defendant is, Mr. Martinez, 3rd watch correctional sargent at S.C.C. Fac. B

Name of twelfth defendant is, John/Jane Doe's, they are "members" of Covid-19 Movement Matrix, Population Management Unit, in Conjunction with Health Care Oversight Program at S.C.C

Name of thirteenth defendant is, J. Hernandez, Correctional Officer at S.C.C.

Name of fourteenth defendant is, Mr. Griff   , he is a Correctional Sargent at S.C.C. Fac. B

Name of fifteenth defendant is Joel Youngheim, Rabbi of S.C.C.

2 (a)

NOTICE TO THE COURT

Petitioner understands the difficulty with which it is to correllate each grievance and exhibit with facts of the case. He's sure that the blame is on himself, (mostly) but has, for the benefit of this court to have some measure of clarity, added a page that will attempt to make interpretation easier.

That said page of clarity is titled Exhibits Page, and each exhibit is summarized at to "the uses they have" in relation to the claims herein.

Petitioner aplologizes for any inconveniences he places this court in, but he must soon attain remedy for rancid kosher meals (dinner's) being served to him on a regular basis. His 3,200 dollar stimulus check is ran out, and he can no longer avoid his indigence and inability to survive without wholesome foods being served to him daily.

Although petitioner is seeking significant monetary relief, the problem will not be fixed without some kind of declaratory relief, to stop giving out rancid kosher dinners.

Sincerely,

Joseph Marsala

EXHIBIT(s) PAGE

| | |
|---|---|
| **Exhibit A** | • (2) negative covid tests/ and the letter to Warden informing him of his staff not useing masks or Covid protocols,(pg." 4 (3) (d)(e) and (h)) |
| **Exhibit B** | • Program Status Reports for 12-12/19-2020, which detail for administration, which dorms have been found to have the Corona virus in it, |
| **Exhibit C** | • Petitioner's positive Covid-19 test taken 3-days after the 12-15-20, moves that exposed me to covid, |
| **Exhibit D** | • (2) grievances one for medical and one for CDCR administration log## /4630; SCC HC 21000157 to prove exhaustion of admin. remedies, |
| **Exhibit E** | • Eaton's response letter, to a lost correspondence I made with him, about the rancidity of kosher dinners and the refusal to replace second trays, |
| **Exhibit F** | • Retaliation grievance #SCC-x-19-00737, rejected for "attaching a staff complaint and (2) signed declarations by witnesses, and #SCC-x-19-02309 rejected for "similarity" with another ration reduction claim, both should've been processed, |
| **Exhibit G** | • Grievance #148682 which chief appeals coordinator found machination by T. Allen, and became both log#207696 and answer to unrelated and abandoned grievance because of sexual harrassment by the interviewer 5 months later. see exhibit J |
| **Exhibit H** | • A request for interview (22-form) informing Luther that his promise from "withdrawn grievance 02260", that I could return my rancid trays to a culinary supervisor, did not pan out, that I was hungry, and angry. Here Culinary staff acknowledges that they are aware of rancidity with kosher dinners, |
| **Exhibit I** | • H. Valencia's disregard for ration reduction of cream cheese after acknowledged. Which lasted for 5 months, hinting toward why rancid dinners are not fixed either; failure to act, |
| **Exhibit J** | • Abandoned grievance (for sexual harrassment), it included numerous issues with kosher foods e.g. kosherness of P.I.A. applejuice; told to not complain to culinary staff Rogan; cold dinners for 2 years; a dinner w/broken seal taped shut w/scotch tape; no kosher oven; broken plastic kosher trays and the hazard of pieces being in food choke/cut gums hazard; early chow release disclosure; and bone spurs on my heels, |
| **Exhibit K** | • Grievance #210502 (sexual harrassment) and the statement given to PREA investigators. |
| **Exhibit L** | • Declarations of other kosher inmates and rancidity of kosher dinner trays, |

EXHIBIT(s) PAGE (cont.)

Exhibit M • A declaration of a witness in the dining hall who had seen that retaliation and also had seen the rancidity of a meal on 7-3-22. and a Appeals coordinator correspondence requesting the video footage of 6-27-22 at 6:35 a.m. to 6:40 a.m. for a serious rules violation, to gather as much evidence as possible to adjudicate the incident,

Exhibit N • Grievance # 225489 the falsifying of documents saying confidential correspondence was mailed out when it was refused and sent back to me instead, this was the letter I promised Defendant Gritt , I would send to E.P.A. reporting a Federal Crime of molesting/knocking down Songbird Swallow nests.

2(d)

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: <u>U.S. Constitution's 8th Amendment against Cruel and Unusual Punishment/ Prison Conditions</u>.

2. **Claim I.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: <u>Exposure to Covid-19 /communicable disease</u>

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Defendant(s) Ralph Diaz and Kathleen Allison, were both Secretary of C.D.C.R. during Covid-19 outbreak in S.C.C 2020. And were both aware of the Plata/Coleman 2017, Supreme Court ruling about California Prisons being unconstitutionally overcrowded, and of the American Correctional Associations, subsequent audit at Sierra Conservation Center, that found max capacity in dorms being 10 inmates per dorm. And that a "waiver" #4-4135 was given to S.C.C. to allow for 32 inmates per dorm, because it was a "fire training facility" with an average of an inmates stay being 7 months. It was also upon these two defendants awareness, that in 2019, hundreds of longterm offenders, not eligible for fire camp being housed at 32 inmate capacity per dorm would violate that waiver, but even at Covid-19 physical distancing demands made by any and every Health agency, these two defendants never acted to protect the rights of petitioner regarding overcrowding and Covid-19 physical Distance requirements being impossible in the Dorms at Sierra Conservation Center. These negligences resulted in me not only being housed at 320% the max capacity, but contracting the Covid-19 virus twice now.
   Defendants Patrick Eaton, Steve Smith, Dr. Sinclair, Mr. Martinez, and said Jane/John Does are all part of a Movement Matrix at S.C.C. responsible for moving (4) inmates, exposed to covid-19, in petitioners unexposed dorm, #69, from dorm 51 and 53, on 12-15-20, even though he tested negative on 12-07-20; 12-11-20 and 12-15-20 see exhibits A and A(1) (two negative Covid-19 tests for 12-7-20 and 12-11-20; 12-15-20 test is missing) and see Exhibits B and B(1) (Program Status Reports, informing administration of every dorms status on exposures to Covid.) and see exhibit C Petitioners Positive Covid-19 test for 12-18-20.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   I now am shortwinded when I participate in activity that involve running, and I forget everything, my body is weaker than it was, I gained 30 pounds, and my cholesterol points shot up 40 points, the pain I had before in my knees and back are ten times worse, I forget to take my medications, and down the road who knows what.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☐ Yes  ☒ No
   b. Did you submit a request for administrative relief on Claim I?   ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Claim I to the highest level?   ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. <u>See grievances for Medical and Administration Exhibit(s) D and D(1)</u>
   <u>T.Allen never disclosed names of movement matrix/Defendant S. Smith basically called me liar.</u>

3

## CLAIM II

1. State the constitutional or other federal civil right that was violated: U.S. Constitution's 8th Amendment against Cruel and Unusual Punishment/ Prison Conditions/ Rations Reductions for two years.

2. **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - [x] Basic necessities
   - [ ] Mail
   - [ ] Access to the court
   - [ ] Medical care
   - [ ] Disciplinary proceedings
   - [ ] Property
   - [ ] Exercise of religion
   - [ ] Retaliation
   - [ ] Excessive force by an officer
   - [ ] Threat to safety
   - [ ] Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Defendant Patrick Eaton recieved confidential correspondence from me, informing him that my kosher dinner trays were being served to me rancid, and that retaliations would occur when grieving that, invoking his duty to make those deprivations permanently stop. He misrepresented that letter as to staff actions, and gave a directive for culinary to test/taste a cycle of kosher dinners, for rancidity. See Eaton's response letter Exhibit E. Defendant T. Williams used machinations to prevent petitioner from resolving the issue by rejecting 602's for attaching declarations and staff complaints/supporting documents "You are an inmate and cannot file staff complaints" Log #SCC-X-19-00737 and for the filing of another similar grievance about "not getting fed!" log # SCC-x-19-02309. (It was Covid-19 "lockdown" and food was delivered to cell without culinary supervisors to address rancidity) petitioner contends that T. Williams should have deemed the grievance an emergency, rather than allow for petitioner to potentially not eat dinner for another 14 days. see exhibits F and F(a) grievances Log #'s SCC-x-19-02309 and SCC-x-19-00737. Defendant T. Williams' actions resulted in furthering my suffering reduced rations and food rancidity.
   Defendant T. Allen, also finalized grievances ##80848 and 00737, but rancid kosher meals continue to be served to petitioner. See Exhibit G (grievance Log #: 00737/02309 appeals chief mosley questions integrity Defendant Mr. Luther interviewed me 1st for this issue, in a grievance I withdrew, in 2019, because he had told me, "take any bad trays to a supervisor and we will replace it." This was the "similar" grievance T. Williams spoke of #SCC-X-19-02260. In a 22 form I sent to Mr. Luther, I notified him that supervisors were not entirely receptive to replacing any trays,      continued on pg 4 (a)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   8th amendment deprivation /Basic Human Necessities/ and related issues when consuming rancid/sour foods/feeling of worthlessness, and hopelessness/

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   [ ] Yes  [x] No
   b. Did you submit a request for administrative relief on Claim II?   [x] Yes  [ ] No
   c. Did you appeal your request for relief on Claim II to the highest level?   [x] Yes  [ ] No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## SUPPORTING FACTS (cont.)

That I was hungry, angry, and told to eat from the unkosher food line, and to buy my own food. See exhibit H (22-form about rancid food)

In that 22 form response, Luther does not answer, but, it is acknowledged that there is a problem with rancid trays, and to bring it back to a supervisor. Last but not least, they say they will contact the vendor, to address the problem. Luther's inaction has resulted in rancid food being issued to me for two years running.

Defendant H. Valencia addressed a grievance having to do with vendor packaging 1 of the two 1 oz. cream cheese buckets labeled on each package. He informally granted it at interview on 12-16-20, but the reduced rations for that 3 per week breakfast, continued to be served to me until, according to my records, 4/9/21! I see now that problems are not fixed by returning rancid meals to vendor, but by me having to put the rancid food in my mouth, one at a time, until they are gone! see exhibit I (grievance #000000065747)

Defendant Keith Robinson, was E-Mailed by a dietician, whom my primary care giver Dr. Durham scheduled an appointment with, about the rancid foods I'd been recieving, and how it affected me. Nothing ever came up, and the primary care giver disappeared. I am still recieving rancid foods, on a regular basis. Mr. Robinson failed to act. Exh. J

On 5-28-22, I recieved a rotten Bologne Sabbath Dinner tray; on 5-29-22, I recieved a rotten Pot Roast with worms in a green bean; on 5-30-22, a sour egg fritatta was served to me; on 6-6-22 (3) sour egg fritatta's were served to me; on 6-7-22 a rancid vegetarian cutlet was served to me; on 6-8-22 a tainted tomato was served to me and I had to abort a dental procedure; on 6-10-22, I was served rancid pot roast; On 6-12-22 rotten stuffed vegetable shells were served to me; on 6-16-22 sour hot dog and chili was served to me; on 6-21-22, sour peas were served to me on the side of a veggie cutlet; and on 6-28-22, the vegetables in a stuffed shells tray were sour.

In grievance # 000000080848, T. Allen advised me to, "bring it to the attention of the supervisor on duty immediately if a Kosher meal is served to you opened". These trays' seals break when they are cooked to proper temperature, and in reality, they will never be replaced if they are opened, nor have hot dinners been served, but for a few times in two years!

Defendant Joel Youngheim, in an unrelated grievance Ex. J Prison Industries Authority "Apple Juice" being substituted for kosher fresh fruit of the day, by culinary supervisor Rogan, resulted in a comment by Mr. Youngheim, that I think constituted both sexual harrassment and discriminatory intent that shows why he's done nothing to stop the rancid food from being served to petitioner. "When I see a circumcised worm, I'll send him your way." As a Messianic Jew, I am an outsider and can therefore eat Jewish penis. Mr. Youngheim has failed to monitor Kosher food at S.C.C.,

4 (a)

failed to fix rancid food problem and sexually harrassed me, before we ever got to the rancidity food issue of that grievance Ex J. among several other issues, another retaliation/intimidation issue, cold dinners for two years, an open tray sealed with scotch tape; no kosher oven, broken plastic trays, that get into food, with pieces gettin caught in teeth and throat, early chow disclosure, and bone spurs in my heels.

    Petitioner filed grievance for sexual harrassment and reported it to PREA officers and gave a statement to PREA officers about the interview for exhibit j, see exhibit K grievance #210502 and "statement given to PREA investigators."

    There are only (4) inmates on the Kosher Diet Meal on Fac.B at Sierra Conservation Center, and according to them, I am not the only person recieving rancid kosher dinners. See Exhibit L. (Declarations of other Kosher inamtes)

    This court is the only remedy left for petitioner to be served food that is not rancid, and be compensated for the last two years of ration reductions and related issues with consuming rotten foods. No-one in administration will fix the problem:

## CLAIM III

1. State the constitutional or other federal civil right that was violated: U.S. Constitutions' 1st amendment, Right to Petition the Government for redress of grievances

2. **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   ☐ Basic necessities   ☐ Mail   ☐ Access to the court   ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property   ☐ Exercise of religion   ☒ Retaliation
   ☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Defendant J. Hernandez, watched me go into the dining hall at approx. 6:30 a.m. on 6-27-22, as do the Fac. B video Cameras. I am a "Kosher" inmate, and we do not eat in the dining hall. I can be seen by same video cameras exiting same dining hall, 1-2 minutes later, and walk to bleachers by handball court, sit down, open my Kosher meal, and see my cream cheese is missing. I have filed many grievances on this subject, and have been told time and time again, that if I see something wrong with my Kosher meals, e.g. rancidity, broken seals, or omitted items, to immediately report it to a culinary supervisor. See exhibit, F. While trying to do so, I informed J. Hernandez, "There's a problem with my food." and entered the dining hall. He called me back and started harrassing me, yelling, rudely, "Why didn't you tell me what's wrong with your food? I told him that unless he has 2 ounces of cream cheese, he can't help me. He then furthered his harrassment and told me to stand against the wall, and spread my legs, and he searched me, rummaged through my food, and then told me, "Now you ain't getting your cream cheese. He handed me my food, and I continued into dining hall, (cont.. on pg. 5 (a))

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Deprivation of 1st amendment exercise, retaliation/harrassment/intimidation while engaging in protected activity, "reporting ration ommissions"

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☐ Yes ☒ No
   b. Did you submit a request for administrative relief on Claim III?   ☐ Yes ☒ No
   c. Did you appeal your request for relief on Claim III to the highest level?   ☐ Yes ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Intimidation rendered Administrative Remedy, "Unavailable". Ross v. Blake

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

5

and walked to the c/o at the window Randall, and with my right hand, crossed over my chest my kosher meal that ommitted cream cheese, and at the same instant, J. Hernandez cuffs my left hand. I briefly tell c/o Randall, that my cream cheese is missing.

J. Hernandez is a little rough with me escorting me to medical, and I look back at his name tag, and he threatened me if I looked back again he would slam me.

It is petitioner's position that, the reporting of any rancid foods, or ommissions of food to the culinary supervisor, or any other person acting under the color of state law, including c/o J. Hernandez, is protected conduct, and the first stage in a grievance/lawsuit.

Next time when I have a problem with my food, I will not be so comfortable with grieving it, and that is a very real inhibition to the filing of grievances, rendering then and next time, remedy unavailable, under numerous precedents. See Exhibit M

Defendant, Mr. Griff, was the sargeant on duty, and asked me to tell him what happened. I told him about the grievance I had about my Kosher food, and that I was attempting to do what I'd been told on several occassions to do in that scenario, on grievances and 22 forms from culinary supervisors, and by the warden himself: Exhibit E
I also informed him that that orally given grievance was activity protected, under two precedents I know very well, Entler v. Gregoire and Gleason v Placencia.

Sargent Griff, told me he didn't care about what I was saying, and that he was going to write me up for "Delaying a Peace Officer"

It is petitioner's position, that this defendant caused the deprivation/violation of the same Federal Right, by participating in the very same act as J. Hernandez. This defendant was present in the dining hall, and stood idle doing nothing.

I've had one conversation with this defendant, about the knocking down of nests belonging to birds in the migratory Bird Act Treaty, which forbids molesting active nests in any way. He told me that, the knocking down of these nests has been being done for years at S.C.C. I told him that that was because nobody ever wrote the EPA or Forest Service to report it, and that I would if he didn't make his officers stop doing it.

I recently did, and that confidential correspondence was stopped from ever leaving the prison, but documented as having left the prison. However it couldn't have left the prison if it was returned to me. So I grieved it, and the false documentation that it implied. I photo copied everything and attached them to the grievance, and the grievance was denied, and it was deemed an accident that a Federal Crime was prevented from being reported. see exhibit N

## E. REQUEST FOR RELIEF

State the relief you are seeking:

Claim #1 $2,500 nominative; $25,000 (plus) Compensatory; $250,000 Punitive

Claim #2 $7,500 nominative; $75,000 compensatory; $750,000 Punitive

Claim #3 $25.00 nominative; $250.00 Compensatory; $2,500 Punitive

* See Previous Page for Details and Declaratory Damages

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 7/7/2022
DATE

SIGNATURE OF PLAINTIFF

- N/A
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

(Signature of attorney, if any)

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.