# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH AUGUST MARSALA, | Case No. 1:22-cv-00843-ADA-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM |
| v. | |
| DIAZ, *et al.*, | (ECF No. 31) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Joseph August Marsala ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's first amended complaint is currently before the Court for screening. (ECF No. 31.)

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

1

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at San Quentin State Prison in San Quentin, California.  The events in the complaint are alleged to have occurred while Plaintiff was housed at Sierra Conservation Center ("SCC") in Jamestown, California.  Plaintiff names the following defendants, all employed at SCC: (1) Ron Davis, Associate Director (Rec. Cent. Adult Inst.); (2) Patrick Eaton, Warden; (3) Katie Brown, Chief Medical Officer; (4) E. Spangler, Administrative Officer of the Day ("AOD"), 12-9-20 to 12-16-20; (5) John/Jane Doe AOD from 12-2-20 to 12-9-20; (6) Trent Allen, Chief Deputy Warden; (7) John/Jane Doe Facility B Watch Commander, 3rd Watch on 12-15-20; (8) John/Jane Doe Facility B Lieutenant, 3rd Watch on 12-15-20; and (9) Sergeant Martinez, Facility B 3rd Watch on 12-15-20.

Plaintiff alleges as follows:

On 12-6-20, SCC's Chief Medical Executive received two positive COVID-19 tests from Facility B (see Ex. A, Daily program status Report) and ordered testing for the entire yard for COVID-19 and ordered a restriction on movement, ". . . only essential Moves/emergent Moves . . ."

On 12-9-20, 62 of the ordered tests were found to have had COVID, from 14 dorms on Facility B at SCC, and it was known to Defendants Patrick Eaton, et al. and the pre-COVID

2

world, that those inmates in the 14 dorms who were exposed, needed to be kept from the rest of the population.  A special circumstance the warden is required to disclose to his replacement during non-business hours, known as the AOD (Administrative Officer of the Day) and is discussed in "Face to Face briefing" between them, and the replacement AOD, and Chief Deputy Warden, every Thursday by 5 p.m.  See CDCR DOM 51110.1–8.  (See also Ex. D, Negative Test since Order of 12-6-20.)

This meeting of the minds, discusses the Administrative Requirements that needed to be met, mainly to prevent the spread of COVID-19 from the 12-9-20 62 positive COVID test findings.

Yet, mass moves began to occur immediately, and continued until the 12-15-20 moves that violated Plaintiff's Eighth Amendment conditions of confinement protections, because the 4 inmates who moved into Plaintiff's dorm had been from 2 of the identified Dorms in Ex. A.  An unreasonable response to whatever essentiality/emergency Administration claimed to have made the moves for, as it succeeded in the opposite goal, the prevention of COVID-19 spread.  See Declaration of Patricio Gonzales, Ex. B.

Plaintiff refers to the allegations in a first amended complaint filed in another case, *Victory v. Allison*, where the plaintiff alleged that on December 12, 2020, John Doe 1 authorized an inmate to be relocated from one dorm where a number of inmates had tested positive for COVID-19.  *See Victory v. Allison*, Case No. 1:22-cv-01118-JLT-SAB (PC), Findings & Recommendations Recommending Dismissal of Action, Doc. 24, p. 4.  Plaintiff alleges that these allegations refer to the same AOD, prison facility, and failure to protect claim.

Each "already exposed inmate" moved into a dorm of unexposed inmates could have struck Plaintiff lethally, or any other person in the pre-vaccine COVID-19 world.  It was an unreasonable risk to Plaintiff, that the entire world knew of, including defendants, who for at least 6 days failed to make the moves stop or report the failure to follow the orders of the Chief Medical Executive.  This resulted in 99.9% of the Facility B population contracting COVID-19.

On 12-15-20 during 3rd watch, the other inmates laid down in front of the door, protesting against the 4 inmates being moved into dorm #69.  Defendant Sgt. Martinez threatened to send

1  them to a GP yard that they would be attacked on.  Plaintiff questioned him, "Who are you
2  talking to?" and he said, "All of you!"
3       Plaintiff alleges this threat was loading, considering the AOD for that day was a CCIII
4  level Counselor/Captain whose office is in the trailer where the counselors decide transfers of
5  inmates (and in 4 person face to face).
6       The grievance Plaintiff filed was answered by another member of the 4-person face to
7  face briefing of 12-9-20 AOD duty cycle exchange, the Chief Deputy Warden T. Allen (see Ex. C
8  grievance log #000000074630) and he hid facts about his own involvement in the 12-15-20
9  moves, and every other person responsible for the passing on of the Chief Medical Executive's
10  order to not make moves to prevent the spread of COVID-19 (The Warden, AOD coming/going,
11  and Chief Deputy Warden).
12       Plaintiff alleges that there were completely empty dorms when all these moves occurred,
13  exposing Plaintiff even though he tested negative to COVID-19 during 12-11-20 testings, and
14  Medical had been made aware of the results only hours before the 12-15-20 moves.
15       It was rumored that a Reception Center was being implemented, and Plaintiff believes that
16  Defendants used a loose interpretation of "essential moves" and "operational necessity" in Penal
17  Code 5058.3 to cover up a strategy to use herd immunity to get more Reception Center space, that
18  as soon as everyone caught and got over COVID-19, we can start shipping inmates in.  As
19  COVID-19 clogged the entire judicial system, from county to prisons, a running Reception Center
20  at SCC would be perfect, but the COVID-19 spread prevention plan took up space.  Instead the
21  provided space was used for a reception center schedule and disregarded the risk of exposing 28
22  people, including Plaintiff, to pre-vaccine COVID-19, while empty dorms were available.
23       Plaintiff originally blamed Ralph Diaz, Kathleen Allison, and/or Jeffrey MaComber,
24  because only they could authorize or make regulation revisions under Penal Code 5058.3 to create
25  a new Reception Center.  But Plaintiff watched "ONLY" SCC administration make moves, and
26  Medical administration failing to report the danger of it.
27       Defendant Ron Davis was the executive officer, in the position to make regulation
28  changes and request approval by Ralph Diaz to make a reception center at SCC, was responsible

4

for implementation of it and the use of COVID-19 spread prevention space for the reception center instead of physical distancing (the original intention).  He is sued in his individual capacity, as the head of the conspiracy to use COVID-19 steps to win space for a Reception Center and compact inmates with COVID-19-infected inmates when multiple empty dorms are available.

Defendant Patrick Eaton was Warden at SCC and signed all Daily Program Status Reports ("DSPRs"), *see* Ex. A, acknowledging the special circumstances involved with keeping exposed and unexposed inmates from being moved into and from the 14 dorms found to have COVID-19 in them.  He was part of the 4 person face to face briefing on 12-9-20 to inform new oncoming AOD about the Chief Medical Executive's order to not move inmates nonessentially or emergent.  He allowed everyday nonessential moves to take place, moving people to opposite sections of the Reception Center area, from the 12-9-20 order until the 12-15-20 moves, and failed to make it stop.  He is sued in his individual capacity for allowing conditions of confinement to be so cruel and indifferent to the exposure of inmates to a seriously communicable disease, although empty dorms and designated quarantine areas were available and at his disposal as a reasonable alternative.  *See* Ex. E (Plaintiff's positive SARS test, dated December 18, 2020).

Trent Allen was Chief Deputy Warden and one of the 4 face to face briefees who failed to reasonably enforce CME orders regarding movement, failed to make it stop, and who conspired to hide his culpability by answering Grievance #000000074630 so vaguely as to avoid culpability enforcement, similar to obstruction of justice.  He is sued in his individual capacity, for his inaction and failure to report intentionally exposing inmates to COVID-19, failure to make it stop, to further the conspiracy of conditions of confinement related to exposure to seriously communicable disease.

John/Jane Doe AOD for the 12-2-20 to 12-9-20 duty cycle, and his failure to notify, correct, or report special circumstances in the 4 person face to face briefing on 12-9-20, by 5 p.m., what needed to be done about the mass outbreak of 12-9-20, what actually was being done about it, and what should have been happening, is sued in his individual capacity.

///

1    E. Spangler, the AOD from 12-9-20 to 12-16-20 and the AOD at the 4 person face to face
2 briefing where special circumstances are discussed, including what to do about the 62-man
3 COVID-19 outbreak of 12-9-20, should have discussed recent moves, whether to continue them
4 or stop them and report them, his failure to act in a way to make the moves stop (the absence of
5 any of the 4 face to face briefees reporting the moves, or trying to put a stop to them, links a
6 meeting of the minds and a similar knowledge of end result and/or plan, a requisite for
7 conspiracy) is being sued in his individual capacity. Empty dorms were available.

8    Katie Brown, the Chief Medical Executive, failed to report the deliberate disobeying of
9 her order, since the day of the order, by the Warden, Captain, Lieutenant, AOD, Watch
10 Commander, Sergeant, etc. She is sued in her individual capacity for failure to report deliberate
11 exposure of inmates to COVID-19 in a pre-vaccine world and with available space in completely
12 empty dorms to use instead.

13    Jon/Jane Doe, Watch Commander for Facility B, for his failure to make 12-15-20 moves
14 stop as Medical requested, and knowing the moves were from infected dorms to non-infected
15 dorms, with empty dorms available, is sued in her individual capacity.

16    Jon/Jane Doe Lieutenant, for failing to make the exposing moves stop, failing to follow
17 Chief Medical Executive's order to not make nonessential nonemergent moves, approving them
18 often and numerous amounts straight from quarantine (with available empty dorms as alternative)
19 is being sued in his individual capacity.

20    Sgt. Martinez, for Facility B on 12-15-20 at SCC, is being sued in his individual capacity
21 for conducting the moves of 12-15-20 (exhibit Declaration of Gonzalez), hearing the dorm 69
22 pleas to not be exposed to COVID-19, and not registering that there were empty dorms at his
23 disposal and instead risking the lives of everyone in dorm #69, including Plaintiff. He made Ron
24 Davis happy to gain reception space, and packed dorm #69 full with the 4 inmates from 51 and
25 53, both on DPSR exposure list. He failed to report the upper admins failures, whether deliberate
26 or accidental, these inmates were pleading for their lives, as was Plaintiff, and he threatened them
27 for exercising the First Amendment. CME Katie Brown announced a medical need to "not make
28 moves on Fac. B dorm living." Prison officials were deliberately indifferent to that medically

6

announced need and instead conducted "mass" moves, in this case directly from two of the 14 identified as containing COVID.

Because there were empty dorms available and designated quarantine spaces, prison officials failed to take reasonable measures to abate exposure to COVID-19 risk.

The placement of inmates in these circumstances combined with the poor ventilation in dorms and 540 sq. ft. for 32 people to breath in, "paints a one lunged unit that needs to be [quarantined.]" (ECF No. 31, p. 10.) Prison officials were subjectively aware of the risk in making moves from the 14 dorms, identified on PSR, signed by Warden, AOD, and Ron Davis, the face to face briefing between the Warden, AOD (coming and going), and Chief Deputy Warden, occurred on the day CME announced the medical need to not make moves. That face to face briefing is where they speak of special circumstances about prison administration.

Plaintiff believes the reason why empty dorms were not utilized was to keep and make more Reception Center space.

This approach resulted in 99.9% infection ratio of inmates on Facility B at SCC, and is the result of unreasonable application of the Medical Chief Executive's orders to not make moves unless essential/emergent, and the failure of anyone reporting the moves that occurred for 6 days. Plaintiff's dorm begged that the four not get moved in the dorm, no one had tested positive yet in dorm #69, but moves were being made into there. This was an unreasonable application of the order.

Plaintiff alleges that he contracted COVID-19 and now suffers from foggy thinking/memory, his joints and tendons are weak and painful, back pain exceedingly worse, bleeding noses, and he gets lost in the middle of thoughts, headaches, and frequent lightheadedness.

Plaintiff seeks nominal, compensatory, and punitive damages.

**III.    Discussion**

Plaintiff's first amended complaint fails to state a cognizable claim for relief.

///

///

**A.    Linkage**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff fails to adequately link many of the named defendants to claims in his complaint. Plaintiff may not simply name a defendant and allege that because he suffered a violation of a constitutional right, that the named defendant was therefore responsible for the violation. Plaintiff may also not allege that all defendants collectively participated in or were aware of the same information.

**B.    Supervisory Liability**

Although Plaintiff specifies that each defendant is sued in their individual capacity, (*see* ECF No. 31, pp. 8–10), to the extent Plaintiff seeks to hold any defendant liable based solely upon their supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v.*

*Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

In order to state a cognizable claim related to COVID-19 against any supervisory defendants named, Plaintiff must provide more than generalized allegations that the defendants have not done enough to control the spread of COVID-19. *See Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *see Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID-19 in the prison). Plaintiff has failed to allege direct participation in the alleged violations. He does not make a sufficient showing of any personal participation, direction, or knowledge on these defendants' part regarding any other prison officials' actions. Plaintiff has not alleged factual support that these defendants personally participated in the alleged deprivations.

**C.    Eighth Amendment – Conditions of Confinement**

Plaintiff is attempting to bring a conditions of confinement claim regarding the spread of COVID-19 due to movement of inmates and the placement of inmates who tested negative for COVID-19 with inmates who were infected.

///

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson*, 217 F.3d at 731. Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety. . . ."

1  *Farmer*, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment
2  for denying humane conditions of confinement only if he knows that inmates face a substantial
3  risk of harm and disregards that risk by failing to take reasonable measures to abate it.  *Id.* at 837–
4  45.
5        COVID-19 poses a substantial risk of serious harm.  *See Plata v. Newsom*, 445 F. Supp.
6  3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial
7  risk of serious harm" to prisoners.).  However, in order to state a cognizable Eighth Amendment
8  claim, Plaintiff must provide more than generalized allegations that prison officials and staff have
9  not done enough regarding overcrowding or prison movement or housing assignment to control
10  the spread.  *See Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal.
11  Nov. 17, 2020); *see Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D.
12  Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the
13  spread of COVID-19 in the prison); *Benitez v. Sierra Conservation Ctr., Warden*, No. 1:21-CV-
14  00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021), report and
15  recommendation adopted, No. 1:21-CV-00370 NONE BAM (PC), 2021 WL 4593841 (E.D. Cal.
16  Oct. 6, 2021) (Failed to state a claim on allegations that overcrowding/lack of distance between
17  inmates has exacerbated the conditions leading to transmission of COVID.  Plaintiff alleges that
18  there is no way to socially distance, among other conditions.); *Sanford v. Eaton*, No. 1:20-cv-
19  00792-JLT-BAM (PC), 2022 WL 1308193, at *8 (E.D. Cal. May 2, 2022), report and
20  recommendation adopted in full, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 2181782 (E.D.
21  Cal. June 16, 2022 (in order to state a cognizable Eighth Amendment claim against the warden,
22  associate wardens and any other defendants named, Plaintiff must provide more than generalized
23  allegations that the warden, associate wardens and other defendants have not done enough
24  regarding overcrowding to control the spread.); *Fernandez v. Gamboa,* No. 21-CV-01748 JLT
25  BAM (PC), 2022 WL 658590, at *8 (E.D. Cal. Mar. 4, 2022) (the actions of Defendants may not
26  have been effective or a "perfect response," but the numerous efforts undertaken demonstrate that
27  Defendants were engaged in active conduct to manage the spread of the virus.)
28  ///

The Court notes that overcrowding, by itself, is not a constitutional violation. *Doty v. County of Lassen*, 37 F.3d 540, 545 n.1 (9th Cir. 1994); *Hoptowit v. Ray*, 682 F.2d at 1248–49 (noting that overcrowding itself not Eighth Amendment violation but can lead to specific effects that might violate Constitution), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995); *see Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989) (allegations of prison overcrowding alone are insufficient to state a claim under the Eighth Amendment.); *see also Rhodes v. Chapman*, 452 U.S. at 348–49 (double-celling of inmates by itself does not inflict unnecessary or wanton pain or constitute grossly disproportionate punishment in violation of Eighth Amendment). An overcrowding claim is cognizable only if the plaintiff alleges that crowding has caused an increase in violence, has reduced the provision of other constitutionally required services, or has reached a level rendering the institution no longer fit for human habitation. *See Balla*, 869 F.2d at 471; *see, e.g.*, *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam) (as amended) (reversing district court's dismissal of claim that overcrowding caused increased stress, tension, and communicable disease among inmate population); *Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984) (affirming that Eighth Amendment violation may occur as result of overcrowded prison conditions causing increased violence, tension, and psychiatric problems).

Despite the transmissibility of the COVID-19 virus, Plaintiff's allegations that inmates exposed to COVID-19 were placed into a cell with inmates not exposed to COVID-19 and testing negative for COVID-19, are not sufficient to satisfy the objective prong, i.e., that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm."

At most, Plaintiff alleges that 4 inmates who were exposed to COVID-19 were moved into Plaintiff's unexposed dorm, even though Plaintiff previously tested negative for COVID-19 multiple times. However, Plaintiff again does not allege that the inmates had tested positive for COVID-19 or that any member of staff or any defendant knew they had been exposed to COVID-19.

Plaintiff's speculation that Defendants purposely moved inmates into overcrowded dorms when empty dorms were available for social distancing and quarantine, in order to free up space

for a Reception Center, does not provide any factual basis to support his claims.  Furthermore, even if the moves were not considered "essential" or "emergent" as required by the Chief Medical Executive's order, violation of prison policies does not rise to the level of deliberate indifference.  The mere failure to follow CDC COVID guidelines does not suffice to allege a constitutional violation.  *See Fraihat v. U.S. Immig. & Customs Enforcement*, 16 F.4th 613, 639 (9th Cir. 2021) (failure of ICE COVID policies for immigration detention centers to comply fully with CDC recommendations and to "more strongly recommend social distancing" "did not support a finding of deliberate indifference"); *Peyton v. Cates*, No. 1:22-cv-00151-JLT-EPG (PC), 2022 WL 1430752, at *5 (E.D. Cal. May 5, 2022), adopted, 2022 WL 2307789 (E.D. Cal. June 27, 2022) ("CDC guidance and prison policy are not alone determinative of constitutional requirements") (citation omitted); *Jones v. Sherman*, No. 1:21-cv-01093-DAD-EPG (PC), 2022 WL 783452, at *8 (E.D. Cal. Mar. 11, 2022) ("the failure to follow certain COVID-19 guidelines, without more, is insufficient to satisfy the subjective prong of the deliberate indifference standard") (footnote omitted).

The first amended complaint fails to set forth sufficient factual allegations to demonstrate that Defendants knowingly disregarded an excessive risk to Plaintiff's health and safety.  Rather, Plaintiff's allegations amount to potential negligence, at most, which is not sufficient to give rise to a claim for relief.  Accordingly, Plaintiff fails to state a cognizable claim for deliberate indifference.

**IV.    Conclusion and Order**

For the reasons discussed, the Court finds that Plaintiff's first amended complaint fails to state a cognizable claim for relief.  Despite being provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his complaint.  Further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

**(14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 17, 2023**          /s/ Barbara A. McAuliffe
                                        UNITED STATES MAGISTRATE JUDGE